UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:19-CR-065-TAV-DCP-15 |
| | ) | |
| TINA D. BERRY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant's Motion for Release Pending Sentencing [Doc. 419]. Defendant seeks release pursuant to 18 U.S.C §§ 3142 and 3143 in light of "her health condition and the ongoing worldwide COVID-19 pandemic" [*Id.* at 1]. The government has responded in opposition [Doc. 420]. Because defendant is subject to detention pursuant to section 3143(a)(2) and has failed to establish (1) by clear and convincing evidence that she is not likely to flee or pose a danger to another or the community or (2) that exceptional reasons make her detention inappropriate, *see* 18 U.S.C. § 3145(c), the Court will **DENY** defendant's motion [Doc. 419].

**I.     Background**

On April 16, 2019, a grand jury indicted defendant on one count of conspiracy to distribute and possess with the intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin [Doc. 3]. Defendant was arrested on April 22, 2019 [Doc. 57], and appeared before the magistrate judge for an initial

appearance and arraignment on April 23, 2019 [Doc. 30].  At this hearing, the government moved for detention pursuant to 18 U.S.C. § 3142(e) [Doc. 42].  Defendant waived her right to a detention hearing at that time but reserved the right to move for a detention hearing at a later date [*Id.*; Doc. 41].  The magistrate judge ordered defendant detained [Doc. 42].

On October 9, 2019, defendant, pursuant to a written plea agreement [Doc. 266], pled guilty to a lesser included offense to Count One of the Superseding Indictment [*Id.*; Doc. 280], that is, conspiracy to distribute and possess with the intent to distribute forty (40) grams or more of a mixture and substance containing a detectable amount of fentanyl and 100 grams or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) [Doc. 266].  Defendant was remanded to custody pending sentencing [Doc. 280], which is currently set for August 5, 2020 [Doc. 396].

Defendant awaits sentencing at the Roger D. Wilson Detention Facility in Knoxville, Tennessee [Doc. 419 p. 2–3].  She reports that she has experienced "trouble breathing" while at the facility [*Id.* at 2].  According to the presentence report prepared by the United States Probation Office, defendant suffers from, inter alia, chronic obstructive pulmonary disease (COPD) and emphysema, [Doc. 380 (reporting that "[r]ecords received from the University of Tennessee Regional Medical Center in Knoxville, Tennessee, confirm these conditions")].  Defendant also states that her medical records "are replete with references to the fact that she is a smoker" and a 2015 medical record references use

2

of an Albuterol inhaler. In light of her various medical conditions, particularly her COPD, defendant, who has been in continuous custody since her arrest (approximately fifteen (15) months) [Docs. 42, 280], now seeks to be released on conditions pending sentencing [Doc. 419].

**II.     Analysis**

The Bail Reform Act generally requires that "a person who has been found guilty of an offense described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained." 18 U.S.C. § 3143(a)(2). The offense described in subparagraph (C) of section 3142(f)(1) is "an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. 801 *et seq.*)." § 3142(f)(1)(C).

Here, defendant has pled guilty to an offense which falls within the category of offenses described in subparagraph (C) of section 3142(f)(1). Specifically, as set forth above, defendant has been adjudged guilty of a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) [Docs. 266, 280]. In light of the drug quantity involved in the offense to which defendant has plead guilty, section 841(b)(1)(B) of the Controlled Substances Act subjects defendant to a maximum term of imprisonment of forty (40) years, which far exceeds the maximum term of imprisonment—ten (10) years—required to fall within the category of offenses described in subparagraph (C) of section 3142(f)(1). Accordingly, defendant, who is currently awaiting imposition of sentence, has been found guilty of an

offense described in section 3142(f)(1)(C). As a result, defendant is subject to the general rule requiring detention in section 3143(a)(2).

There is, however, an exception to this general rule. *See* 18 U.S.C. § 3143(a)(2)(A)–(B). A defendant who is subject to detention under the general rule may be ordered released if two requirements are satisfied. First, there must be "a substantial likelihood that a motion for acquittal or new trial will be granted" or the government must have "recommended that no sentence of imprisonment be imposed on [defendant]." § 3143(a)(2)(A). And second, the Court must find "by clear and convincing evidence that [defendant] is not likely to flee or pose a danger to any other person or the community." § 3143(a)(2)(B).

This exception does not apply to defendant. With respect to the first requirement, because defendant pled guilty pursuant to a plea agreement [Docs. 266, 280], the likelihood that a motion for acquittal or new trial will be granted for this defendant is slight. Additionally, the government has not indicated that it intends to recommend that no sentence of imprisonment be imposed on defendant. To the contrary, the government's opposition to the instant motion and the arguments set forth therein reveal that it does not intend to recommend that no sentence of imprisonment be imposed on defendant.[1]

With respect to the second requirement of the exception, defendant has not provided clear and convincing evidence that she is not likely to flee or pose a danger to any other

---

[1] Moreover, according to the presentence report [Doc. 380], to which neither party has objected [Docs. 386, 398], defendant's guideline imprisonment range is thirty-three (33) to forty-one (41) months (offense level 19 and criminal history category II), which falls in Zone D of the Sentencing Table. *See* USSG § 5C1.1(f) ("If the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment.").

4

person or the community. Defendant's arguments chiefly relate to her vulnerability to COVID-19 due to her respiratory ailments, which she does not connect to the section 3143(a)(2)(B) considerations.[2] More pertinently, she does note that the parties have agreed she was a minor participant in the charged conspiracy and that she did not distribute or possess with the intent to distribute controlled substances that resulted in the death or serious bodily injury of any person related to this case [Doc. 419 p. 1–2; *see* Doc. 266 ¶ 3]. While this is some evidence that defendant does not pose a serious or life-threatening danger to the physical safety of any other person or the community, the Court does not find that these facts alone amount to clear and convincing evidence that she is not likely to pose a danger to any other person or the community. Moreover, even if the Court were to find that defendant had shown by clear and convincing evidence that she does not pose a danger to another or the community, defendant does not even argue that she is not likely to flee.

---

[2] While the Court recognizes that the state of the COVID-19 pandemic, in light of defendant's medical condition, could possibly offset incentives to flee or engage in certain criminal activity to some degree—an argument which defendant does not advance in her motion—ultimately, her vulnerability to COVID-19 is of limited probative value under section 3143(a)(2)(B) and is more relevant to a section 3145(c) analysis. *See infra* p. 6–8. Moreover, as the government notes, the state of the COVID-19 pandemic, in light of defendant's criminal history, could also cut the other way with respect to the issue of the danger defendant poses to the safety of the community:

> Not only is the defendant a danger from the potential that she would start dealing drugs again, she is a risk to society based on the current state of affairs because of COVID-19. This pandemic requires common law abiding citizens to follow the rules in order to ensure the safety of the population as a whole. This defendant cannot follow the basic laws required of our society, much less stay away from other members of the public or even exercise proper social distancing. The defendant is a danger to society regardless of the circumstances, but more so during this health crisis.

[Doc. 420 p. 4].

5

And as the government notes, given the guideline imprisonment range calculated in the presentence report [Doc. 380], which is not insignificant, there is some risk of flight. For these reasons, having considered the various section 3142(g) factors, the Court finds that the exception does not apply. As a result, defendant is subject to detention pursuant to section 3143(a)(2).

A person subject to detention pursuant to section 3143(a)(2), and who meets the conditions of release set forth in section 3143(a)(1), may, however, "be ordered released, under appropriate conditions, . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Defendant does not expressly move for release under this provision and thus does not recite or meaningfully engage with the standard for release that it establishes. But given the fact that defendant is subject to detention pursuant to section 3143(a)(2) and she cites the risk to her health posed by the COVID-19 pandemic in light of her medical condition as the basis for her request, the Court (as the government did in its response [Doc. 420 p. 1, 5]) interprets defendant's request as a motion pursuant to section 3145(c) for release from custody in light of exceptional circumstances.[3] Thus, to be entitled to the relief sought, defendant must make two showings: (1) that she meets the conditions of release set forth

---

[3.] The Sixth Circuit has found that section 3145 does not preclude a district court from making a determination of exceptional circumstances in support of release even though that provision appears at the close of a section on review and appeal. *United States v. Christman*, 596 F.3d 870, 871 (6th Cir. 2010) (holding a district court erred in not considering whether a defendant had established exceptional reasons to support the defendant's request for release pending sentencing); *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002) (stating that district courts are "not precluded from making a determination of exceptional circumstances in support of release").

6

in section 3143(a)(1), and (2) that exceptional circumstances make her detention inappropriate. § 3145(c).

First, defendant has not shown that she meets the conditions of release set forth in section 3143(a)(1). The conditions of release set forth in section 3143(a)(1) are essentially the same as those set forth in section 3143(a)(2)(B), which the Court discussed *supra*, p. 4–6. *Compare* § 3143(a)(1) (requiring that the defendant make a showing "by clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community") *with* § 3143(a)(2)(B) (requiring that the defendant make a showing "by clear and convincing evidence that [she] is not likely to flee or pose a danger to any other person or the community"). Because, for the reasons the Court has already discussed, defendant has failed to establish by clear and convincing evidence that she is not likely to flee or pose a danger to another or the community, she has not satisfied the conditions for release under section 3143(a)(1). As a result, she is not entitled to relief under section 3145(c).

Moreover, even assuming defendant had satisfied these conditions of release, she would remain ineligible for relief under section 3145(c) because she has not demonstrated exceptional circumstances. The Sixth Circuit has not definitively ruled on what constitutes the sort of "exceptional reasons" that would justify release pending sentencing, nor does the statute itself define the parameters of an "exceptional reason." Courts appear to agree that circumstances must be "out of the ordinary," "uncommon," or "rare," and that the

7

reasons should set the defendant apart from anyone else convicted of a similar crime or crimes. *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993).

Here, defendant seems to argue that her heightened risk, as a result of her "lung conditions," for "severe and potentially life-threatening complications" were she to contract COVID-19 constitutes an "exceptional reason" justifying relief under section 3145(c) [Doc. 419 p. 3]. The Court agrees that the COVID-19 pandemic has created an extraordinary, unprecedented situation. But "[w]hile the generalized risks of COVID-19 cannot be disputed, courts evaluating whether release from custody is necessary must evaluate the particularized risks posed to an individual defendant." *United States v. Roscoe*, No. 19-cr-20537, 2020 WL 1921661, at *5 (E.D. Mich. Apr. 21, 2020) (quoting *United States v. Sykes*, No. 04-cr-80623, 2020 WL 1846946, at *4 (E.D. Mich. Apr. 13, 2020)); *see also United States v. Sykes*, 807 F. App'x 553, 545–55 (6th Cir. 2020) (finding the defendant "fail[ed] to establish extraordinary circumstances warranting release in light of the COVID-19 pandemic" where he "produce[d] no evidence that he [was] at a higher risk of contracting COVID-19 than other inmates").

The Sixth Circuit has recognized that "'[s]ome courts have determined that the heightened threat posed by COVID-19 to an inmate with a documented risk factor in a detention facility with confirmed cases of COVID-19 can present a "unique combination of circumstances" that meets the "exceptional circumstances" requirement' of § 3145(c)." *Sykes*, 807 F. App'x at 545–55 (quoting *United States v. Clayton*, No. 1:19-cr-251-21, 2020 WL 1940877, at *2 (N.D. Ohio Apr. 22, 2020)). But the Sixth Circuit has not otherwise

8

Case 3:19-cr-00065-TAV-DCP   Document 468   Filed 07/29/20   Page 8 of 15   PageID #: 3137

identified any factors to consider in making a determination with respect to exceptional circumstances warranting release pending sentencing in light of the COVID-19 pandemic pursuant to section 3145(c).

However, in a similar context, that is, in evaluating whether there was a "compelling reason" supporting temporary release of a pretrial detainee pursuant to 18 U.S.C. § 3142(i), the Sixth Circuit discussed, with seeming approval, "the case-by-case factors adopted in *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2–4 (6th Cir. July 8, 2020) (discussing these factors in granting a motion to stay defendant's release pending resolution of the government's appeal, the subject of which was the district court's order releasing defendant pending sentencing pursuant to section 3142(i)—which the Sixth Circuit suggests is limited in its application to defendants pending trial—rather than for an "exceptional reason" pursuant to section 3145(c)). Those factors include:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* (citing *Clark*, 2020 WL 1446895, at *3) ("The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'"); *see also United States v. Smoot*, No. 2:19-cr-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (citing *Clark*, 2020 WL 1446895, at *3) (applying the *Clark* factors in resolving

9

a motion to release the defendant pending trial for a "compelling reason" pursuant to section 3142(i)); *United States v. Rochon*, No. 3:19-cr-146, 2020 WL 3273463, at *5–6 (E.D. Tenn. June 17, 2020) (same).

The distinction between an "exceptional" reason, § 3145(c), and a "compelling" reason, § 3142(i), seems largely academic. Yet, in the context of a section 3145(c) "exceptional reason" analysis, district courts in this circuit have considered a similar yet modified set of factors. *See, e.g.*, *United States v. Johnson*, No. 2:17-cr-20489, 2020 WL 1821099, at *3 (E.D. Mich. Apr. 10, 2020); *Roscoe*, 2020 WL 1921661, at *5–6; *see also McGowan*, 2020 WL 3867515, at *2 (describing *Roscoe* as having "appl[ied] the *Clark* test in analyzing whether there were 'exceptional reasons' for release under 18 U.S.C. § 3145(c)"). In *Johnson*, the district court recited the *Clark* factors and noted that "[w]hile helpful, th[o]se factors do not explicitly require the Court to consider the actual conditions in the facility where the defendant is being held, and in particular the measures being taken there to address the potential outbreak of COVID-19." *Johnson*, 2020 WL 1821099, at *3. Accordingly, the court "appl[ied] a modified set of factors based on those in *Smoot/Clark* in considering whether the defendant has set out exceptional reasons in favor of release":

> (1) the original grounds for the defendant's pretrial detention;
> (2) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);
> (3) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);
> (4) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community.

10

Case 3:19-cr-00065-TAV-DCP   Document 468   Filed 07/29/20   Page 10 of 15   PageID #: 3139

*Id.*; *see also Roscoe*, 2020 WL 1921661, at *5–6 (applying these modified factors as opposed to the original *Clark* factors because the defendant, "similar to the defendant in *Johnson*, ha[d] already been convicted and [was] awaiting sentencing," unlike the defendant in *Clark*, who had not been convicted and was thus pending trial). Here, given the context, the Court will adopt the reasoning of the district courts from the Eastern District of Michigan and apply the modified *Clark* factors. *See Johnson*, 2020 WL 1821099, at *3; *Roscoe*, 2020 WL 1921661, at *5–6.

The first factor is of limited probative value because the predominant reason for the defendant's pretrial detention was waiver [Doc. 41]. At defendant's initial appearance and arraignment on April 23, 2019, the government moved for detention pursuant to 18 U.S.C. § 3142(e) [Doc. 42]. Defendant waived her right to a detention hearing, while reserving the right to move for a detention hearing at a later date [Doc. 41]. In light of this waiver, defendant was ordered detained pending further proceedings [Doc. 42]. Thus, defendant's pretrial detention was the result of waiver, which does not considerably weigh for or against her continued detention. However, the Court also notes the potential applicability of the presumption in favor of detention set forth in section 3142(e)(3)(A) when the issue of defendant's detention was addressed pretrial. *See supra* p. 3–4 (concluding defendant's offense is one described in section 3142(f)(1)(C), which involves the same category of offenses as section 3142(e)(3)(A)).

Next, the Court turns to the second factor: defendant's stated COVID-19 concerns. Defendant has been diagnosed with COPD [Doc. 380 p. 25; Doc. 419 p. 2], a medical

11

condition that the CDC has recognized as placing one at an increased risk for severe illness from COVID-19. *See* People with Certain Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 27, 2020). And according to defense counsel, her "medical records are replete with references to the fact that she is a smoker" [Doc. 419 p. 2]—although this fact is not included in the presentence report and the Court has not been provided with any copies of said records. According to the CDC, smoking *may* increase one's risk of severe illness from COVID-19. *See* People with Certain Medical Conditions. While defendant does not allege that her medical condition is not being effectively managed by medication in line with CDC recommendations for reducing COVID-19-related risks, *see id.*, on balance, it appears that defendant's concerns related to COVID-19 are legitimate.

However, the other two factors support defendant's continued detention pending sentencing. First, the conditions of the facility where defendant is detained do not support defendant's release. Defendant claims that she has "trouble breathing" in the facility [Doc. 419 p. 3], but she does not allege that she has requested medical treatment related to these difficulties or that the facility is incapable of providing appropriate medical treatment. Further, she does not connect these difficulties to any specific condition at the Roger D. Wilson Detention Facility. Similarly, while the CDC has recognized that correctional and detention facilities present unique challenges for control of COVID-19 transmission,

12

*see* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited July 27, 2020), defendant does not point to any specific condition at the Roger D. Wilson Detention Facility that increases her risk of infection. Rather, it appears that the steps taken by officials (e.g., suspending in-person visits, following CDC protocols on COVID-19, and screening inmates and staff for symptoms and risk factors) have been effective in mitigating the risk of exposure and spread of COVID-19 at the facility. *See United States v. Haun*, No. 3:20-CR-024, 2020 WL 1847063, at *4 (E.D. Tenn. Apr. 10, 2020) (discussing the various measures undertaken at the Roger D. Wilson Detention Facility to mitigate exposure to the virus and ensure the safety of the inmate population). Indeed, as of July 17, 2020, there is only one (1) reported positive test amongst the inmates at the facility and three (3) amongst staff. For these reasons, the Court finds that defendant's facility is taking reasonable precautions to mitigate the risks of COVID-19 spread, and this factor weighs in favor of detention.

The final factor, that is, whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community, also weighs in favor of detention. Defendant proposes that she reside at a family member's residence in Knoxville, Tennessee, pending sentencing. She states that this residence has numerous occupants, including two (2) adults and three (3) minor children. While the Court has acknowledged

13

that, in general, the conditions in detention facilities can present challenges for control of COVID-19 transmission, specifically those conditions which make self-isolating or social distancing infeasible, the fact that the residence where defendant intends to reside if released contains numerous occupants would likewise make it difficult for defendant to self-isolate or practice social distancing in accordance with CDC and county-health-department guidelines.  Additionally, given the low number of confirmed active cases amongst inmates at the Roger D. Wilson Detention—one (1)—and the relatively large number of confirmed active cases in Knox County—over 1,800[4]—the Court finds that defendant's risk of infection while detained does not appear, at the present time, to be higher than it would be if she were released in to the general population.  At bottom, defendant has not demonstrated how her proposed release plan would mitigate COVID-19 risks to defendant and the community.  This factor weighs in favor of detention.

In sum, while the Court acknowledges defendant's legitimate concerns related to her medical condition and the COVID-19 pandemic, weighing these concerns against all other relevant considerations, the Court does not find that the evidence establishes an exceptional reason why her detention pending sentencing would not be appropriate.  Thus, even assuming defendant had satisfied the conditions of release set forth in section 3143(a)(1), she would remain ineligible for relief under section 3145(c).

---

[4] As of July 27, 2020, the Knox County Health Department reported 1,847 active cases, 1,332 recovered cases, and twenty-six (26) deaths.  Knox County COVID-19 Data, Knox County Tennessee Health Department, https://covid.knoxcountytn.gov/case-count.html (last visited July 27, 2020).

## III. Conclusion

Defendant is subject to detention pursuant to section 3143(a)(2). Because she has failed to establish (1) by clear and convincing evidence that she is not likely to flee or pose a danger to another or the community and (2) that exceptional reasons make her detention inappropriate, she is not entitled to relief under section 3145(c). For these reasons, defendant's motion [Doc. 419] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE